UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGE EDWARD KASTEL,

                  Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                  Defendant.

CASE NO. 10cv5609JRC

ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate

Judge and Consent Form, ECF No. 2; Consent to Proceed Before a United States Magistrate

Judge, ECF No. 11). This matter has been fully briefed. (See ECF Nos. 12, 17, 18).

       After considering and reviewing the record, the undersigned finds that the ALJ failed to

evaluate properly the medical evidence, including the opinions of treating neurologist Dr.

Clifford Schostal, M.D. and examining psychologist Dr. Brian Adams, Ph.D, failed to evaluate

properly whether or not plaintiff's impairments met or medically equaled a listed impairment

pursuant to 20 C.F.R. pt. 404, Subpt. P, App. 1 and failed to evaluate properly plaintiff's

credibility. Therefore, this Court orders that this matter be remanded , and the ALJ is directed to conduct a new hearing, evaluate the record anew as a whole, conduct a new sequential five-step disability evaluation as necessary, and issue a new decision.

## BACKGROUND

Plaintiff, GEORGE EDWARD KASTEL, worked for ten years as a long distance truck driver, although he stated that the longest he worked at a time was five or six months (Tr. 145, 343). He contends that his diabetes and diabetic neuropathy affects his ability to work as he can only stand for an hour, cannot walk due to foot pain, suffers from irritability and mood swings and is tired from his medications (Tr. 144). Plaintiff was forty-one years old on his alleged disability onset date of August 15, 2007 (Tr. 114).

## PROCEDURAL HISTORY

On March 23, 2008, plaintiff filed protectively a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income (Tr. 64-65, 114-17, 118-126). His applications were denied initially on June 28, 2008 (Tr. 60, 61, 66-69), and following reconsideration on August 20, 2008 (Tr. 62, 63, 70-71, 72-73). Plaintiff's requested hearing was held on January 25, 2010 before Administrative Law Judge Caroline Siderius (hereinafter "the ALJ") (Tr. 24-59). On April 16, 2010, the ALJ issued a written decision, finding plaintiff not under a disability pursuant to the Social Security Act from August 15, 2007 until the date of the decision (Tr. 7-19).

On July 15, 2010, the Appeals Council denied plaintiff's request for review, making the April 16, 2010 written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20 C.F.R. § 404.981. On August 26, 2010, plaintiff filed the underlying complaint, seeking judicial review of the ALJ's written decision (ECF No. 1). On November 30, 2010,

plaintiff filed his opening brief (ECF No. 12). Defendant filed a responsive brief on January 27, 2011 (ECF No. 17), and on February 10, 2010, plaintiff filed a reply (ECF No. 18).

In his opening brief, plaintiff contends that: (1) the ALJ failed to evaluate properly the medical evidence, including that offered by Consultative Examiner Dr. Brian Adams, Ph.D., (hereinafter "Dr. Adams") and treating neurologist Dr. Clifford Schostal, M.D., (hereinafter "Dr. Schostal"); (2) the ALJ failed to evaluate properly whether or not plaintiff's impairments met or medically equaled a Listed Impairment, pursuant to 20 C.F.R. pt. 404, Subpt. P, App. 1 (hereinafter "the Listings"), specifically Listing 11.14; (3) the ALJ failed to properly identify plaintiff's severe impairments; (4) the ALJ failed to evaluate properly plaintiff's credibility; and (5) this matter should be remanded for an award of benefits (ECF No. 12).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* <u>Davis v. Heckler</u>, 868 F.2d 323, 325-26 (9th Cir. 1989)); <u>see</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." <u>Steele v. Barnhart</u>, 290 F.3d 936, 941(7th Cir. 2002) (*citing* <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 93-95 (1943); <u>Johnson v. Apfel</u>, 189 F.3d 561, 564 (7th Cir. 1999); <u>Sarchet v. Chater</u>, 78 F.3d 305, 307 (7th Cir. 1996)); <u>see also</u> <u>Griemsmann v. Astrue</u>, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *8, (W.D. Wash. 2009) (J. Theiler) (*citing* <u>Blakes v. Barnhart</u>, 331 F.3d 565, 569 (7th Cir. 2003)), *adopted and remanded by* 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 98985 (2009) (J. Zilly).

### DISCUSSION

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting*

Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980)).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* Social Security Ruling, hereinafter "SSR" 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (nontreating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (*citing* Lester, supra, 81 F.3d at 830). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need

not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id</u>. (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (*citing* <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. <u>Lester</u>, <u>supra</u>, 81 F.3d at 831 (citations omitted). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831).

1) <u>The ALJ failed to evaluate properly the medical evidence, including the opinions of treating neurologist Dr. Clifford Schostal, M.D. and examining psychologist Dr. Brian Adams, Ph.D.</u>

    a. <u>Treating neurologist Dr. Clifford Schostal, M.D.,</u>

Dr. Schostal began treating plaintiff on March 24, 2008 (Tr. 240-42). Dr. Schostal conducted a neurological examination and observed some wasting in the muscles of plaintiff's feet, as well as high arches (Tr. 241). He also observed diminished sensation in plaintiff's lower extremities from approximately mid-calf down, including complete absence of vibratory sense at the toes (<u>id</u>.). Dr. Schostal concluded that plaintiff demonstrated findings of "mixed large and

small fiber sensory neuropathy in the lower extremities," although ankle reflexes were "quite good" (id.). Nerve conduction studies on April 30, 2008 revealed severe "sensory/motor large fiber polyneuropathy in the lower extremities with both characteristics of axonal and de-myelinating polyneuropathy," providing objective evidence supporting plaintiff's described symptoms (Tr. 250).

On July 21, 2008, Dr. Schostal opined in a letter that the medications plaintiff takes for pain relief may cause drowsiness, which could impair his ability to work, as well as impair his ability to drive a vehicle (Tr. 265). On May 21, 2009, Dr. Schostal again examined plaintiff (Tr. 266). He observed signs of decreased sensation in plaintiff's upper and lower extremities, as well as absent reflexes in the upper extremities and diminished temperature in the lower extremities from the mid-calf down (id.). He opined that the distractibility from plaintiff's pain, along with the drowsiness from the pain medication, "would make it difficult for him to sustain his concentration in operating a motor vehicle for long periods of time" (id.).

The ALJ discussed some aspects of Dr. Schostal's reports and opinions in the written decision (Tr. 13-14, 17). The ALJ appropriately did not rely on Dr. Schostal's opinions regarding the ultimate issue of disability. See 20 C.F.R. § 404.1527(e). The ALJ only gave some weight to Dr. Schostal's opinion regarding plaintiff's impaired ability to drive a vehicle because plaintiff testified at the hearing that he drove (Tr. 17, 32). First, the Court notes that the fact that plaintiff drives does not negate Dr. Schostal's opinion that plaintiff's neuropathy impairs his driving. Similarly, it does not negate Dr. Schostal's opinion that plaintiff's pain medication impairs plaintiff's ability to drive, as plaintiff may choose to drive when he is not taking pain medication, or may choose to drive regardless of the fact that his pain medication is impairing his ability to drive.

The ALJ did not address the opinion by treating physician Dr. Schostal that drowsiness from plaintiff's pain medication could impair plaintiff's ability to work (Tr. 265). However, the Court notes that when analyzing the opinions by non-examining medical expert Dr. Haynes, the ALJ credited the opinion by Dr. James M. Haynes, M.D., (hereinafter "Dr. Haynes"), that "the dosage of the claimant's medications could be adjusted to still achieve adequate pain relief while reducing side effects" (Tr. 17). Next, the ALJ interpreted that the medical evidence led to the suggestion that "doctors have not yet optimized the claimant's medications to achieve a balance of pain control and limited side effects" (id.). The ALJ gave the opinion by non-examining medical expert Dr. Haynes "great weight" (id.).

The Court concludes that the ALJ's rejection without explicit comment of treating physician Dr. Schostal's opinion that drowsiness from plaintiff's pain medication could impair plaintiff's ability to work, while giving "great weight" to the opinion by the non-examining medical examiner who questioned plaintiff over the telephone was not proper. Not only is a treating physician's opinion normally given more weight than that of an examining or a non-examining physician, but also, even if a treating physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31. Based on a review of the relevant record, the Court concludes that the ALJ did not evaluate properly the opinions by Dr. Schostal, and did not give specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Schostal's opinion regarding plaintiff's potential work-related limitations resulting from side effects of his pain medication.

b.  Consultative Examiner Dr. Brian Adams, Ph.D.

Dr. Adams examined plaintiff at the request of the ALJ, conducted a mental status examination, and interpreted the results of multiple examinations of plaintiff's abilities and limitations (Tr. 336-54). Plaintiff demonstrated well below average performance in the more complicated trail B of the trail making test, which tests attention, sequencing, mental flexibility and visual search abilities (Tr. 346). Dr. Adams noted plaintiff's poor performance on memory related tests, but also noted that plaintiff's behavior called into question his effort (Tr. 349-50). Dr. Adams noted that although there was "no clear evidence of intentional misrepresentation of his difficulties," validity testing would "help determine whether or not he is performing at less than his full capability" (Tr. 350). Dr. Adams further opined that if plaintiff was "giving an honest effort, his scores represent significant memory impairment" (Tr. 350; see also Tr. 354).

Dr. Adams further opined that plaintiff's depressive symptoms appeared to "significantly, negatively impact functioning" (id.). Dr. Adams diagnosed plaintiff with major depressive disorder, memory impairment and possible personality disorder (Tr. 351). He assigned a global assessment of functioning (hereinafter "GAF") of 50 (id.).

Dr. Adams specifically assessed plaintiff's mental abilities to do work-related activities (Tr. 352-54). He assessed that plaintiff suffered marked abilities in his ability to understand and remember detailed instructions, although again he implied that validity testing was required in order to rely on this assessment (Tr. 352). Dr. Adams also assessed that plaintiff suffered marked abilities in his ability to make judgments on simple, work-related decisions (id.). Regarding plaintiff's ability to respond appropriately to supervision, co-workers and work pressure in a work setting, Dr. Adams assessed plaintiff as markedly impaired in his ability to interact

appropriately with the public, supervision, and co-workers, as well as markedly impaired in his ability to respond appropriate to work pressure and changes in a routine work setting (Tr. 353).

The ALJ failed to give any specific reason to discount Dr. Adams' opinions regarding plaintiff's marked impairments in his ability to make judgments on simple, work-related decisions, to interact appropriately with the public, supervision, and co-workers, or to respond appropriate to work pressure and changes in a routine work setting. Regarding Dr. Adams' assessment of plaintiff, the ALJ only mentioned some of Dr. Adams' opinions, and gave only two reasons for giving only "some weight" to all of Dr. Adams' opinions (Tr. 17).

The ALJ discounted all of Dr. Adams's opinions because Dr. Adams was not plaintiff's treating physician and only examined plaintiff once. If the opinions of Dr. Adams were not consistent with the opinions of a treating physician, it would be appropriate to discount Dr. Adams' opinions on the basis that he was not plaintiff's treating physician. See Lester, supra, 81 F.3d at 830. However, from a review of the relevant record, it appears that Dr. Adams' opinions are un-contradicted. Therefore, noting that Dr. Adams was not a treating physician does not provide substantial support for the decision to discount his opinions. Similarly, if Dr. Adams' opinions were contradicted by an examining physician or psychologist who examined plaintiff on more than one occasion, it would be logical to discount Dr. Adams' opinions in favor of the opinions by such examining physician or psychologist. Here, it appears that the ALJ discounted Dr. Adams' opinions in favor of her own opinions about the meaning of the medical evidence. This was improper, as the ALJ must explain why her interpretation of the medical evidence was more correct than that of examining psychologist Dr. Adams. See Reddick, supra, 157 F.3d at 725.

The Court notes that the ALJ included in her decision that Dr. Adams "mentioned some concern that the claimant was not putting forth his best effort on the tests" (Tr. 17). However, the ALJ fails to mention that Dr. Adams opined that validity testing would "help determine whether or not he is performing at less than his full capability" (Tr. 350). Dr. Adams did not opine that because of his concerns regarding plaintiff's efforts, that plaintiff's memory functioning should be considered unimpaired. According to Dr. Adams, the record needed to be developed before discounting properly plaintiff's test results demonstrating impaired memory (see Tr. 350; see also Tr. 354). Dr. Adams was aware of his own concerns about plaintiff's efforts, nevertheless he assessed plaintiff as markedly impaired in his ability to understand and remember detailed instructions (Tr. 352). The ALJ must explain why her interpretation of the medical evidence was more correct than that of Dr. Adams. See Reddick, supra, 157 F.3d at 725.

For the foresaid reasons, the Court concludes that the ALJ failed to evaluate properly the medical evidence.

2) The ALJ failed to evaluate properly whether or not plaintiff's impairments met or medically equaled a Listed Impairment pursuant to 20 C.F.R. pt. 404, Subpt. P, App. 1.

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than 12 months, and is included in Appendix 1 of the Listings of Impairments, or is equal to a Listed impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proof regarding whether or not he "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them

to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Id. at 683(*citing* Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

However, the ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing* Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981)). The ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

Plaintiff contends that the ALJ failed to evaluate properly whether or not plaintiff's impairments met or medically equaled a Listed Impairment pursuant to 20 C.F.R. pt. 404, Subpt. P, App. 1, specifically Listing 11.14. Listing 11.14 is the specific listing for peripheral neuropathies, "with disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. pt. 404, Subpt. P, App. 1. This section requires "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movement, or gait and station." Id.

At plaintiff's hearing, Dr. Haynes testified as a medical expert and opined that plaintiff's neuropathy alone did not meet or medically equal Listing 11.14 (Tr. 49-50). However, Dr. Haynes also testified that "you could make a case that if you add them all together, the medication, the neuropathy, the neuropathic pain, which he's certainly entitled to have, and the psychological issues, it might possibly add up to equaling a Listing" (Tr. 50). Dr. Haynes

testimony created an ambiguity regarding whether or not plaintiff's impairments, in combination, met or medically equaled a Listing.

In the written decision, the ALJ gave "great weight" to the testimony and opinion of Dr. Haynes (Tr. 17). However, the ALJ did not mention the specific testimony by Dr. Haynes regarding the possibility that plaintiff's combined impairments equaled a listing, specifically Listing 11.14 (Tr. 17). The ALJ was required to consider plaintiff's impairments, in combination, before determining whether or not plaintiff had "an impairment or combination of impairments that meets or medically equals one of the Listed impairments" (Tr. 10). See Lester, supra, 81 F.3d at 828. In addition, where the ALJ relies on a medical expert and gives the testimony of said medical expert "great weight," the ALJ should address the fact that the medical expert specifically opined that plaintiff's combined impairments possibly met or medically equaled a Listed impairment. See Tonapetyan, supra, 242 F.3d at 1150.

For the foresaid reasons, the Court concludes that the ALJ committed harmful legal error by failing to consider explicitly whether or not plaintiff's impairments, in combination, met or medically equaled Listing 11.14 of the Listings, 20 C.F.R. pt. 404, Subpt. P, App. 1.

3) The ALJ failed to evaluate properly plaintiff's credibility.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment

reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair, 885 F.2d at 603.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. "[I]f a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* Morgan, 169 F.3d at 600) (emphasis added in Vertigan).

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82.

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester, *supra*, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ gave several reasons for discounting plaintiff's testimony regarding his symptoms and limitations (see Tr. 13- 16).  For example, the ALJ noted that when the doctor elicited plaintiff's self-reported problems, plaintiff "made no mention of a mental health issue" (Tr. 14).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The mental status examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). The mental status examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination'." Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported

history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that his "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Dr. Adams knew that plaintiff had not mentioned a mental health illness, yet he nevertheless assigned plaintiff a GAF of 50, indicating serious symptoms or impairments, and diagnosed plaintiff with major depressive disorder (Tr. 351). When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725. Here, the ALJ seeks to discredit plaintiff's credibility, and not the assessment of Dr. Adams, however, the Court finds that that the fact that plaintiff did not make mention of a mental illness does not provide substantial support for the decision to discredit plaintiff's testimony, especially here, where Dr. Adams nevertheless diagnosed plaintiff with major depressive disorder and assigned plaintiff a GAF of 50. See id.

In the context of plaintiff's credibility, the ALJ noted an incident during a mental health counseling session (see Tr. 15, 321). The mental health counselor described the incident as follows:

> [Plaintiff] initially seems reluctant to be here, but as he progresses talking, he becomes energized. He launches into several tirades about the system of SSI, unemployment, and the government in general. His voice escalates and his face becomes strained. He clearly becomes angry and admits this is a problem and raises his blood sugar levels. He is doubtful about meds, but may ask his PCP. Overall, not clear how motivated he is for treatment and seems more interested in condemning the system. Not clear if he is willing to work on changes.

(Tr. 321). The ALJ also cited a June 15, 2007 treatment note that plaintiff was choosing not to follow the diabetic diet (see Tr. 15). However, this June 15, 2007 treatment report occurred before plaintiff's alleged onset of disability on August 15, 2007 (see Tr. 229). Therefore, this

report does not provide substantial support for the ALJ's decision not to credit fully plaintiff's testimony.

The ALJ concluded that these "incidents of noncompliance and failure to heed the recommendation of doctors suggest the claimant does not have a sincere interest in achieving medical and functional improvement" (Tr. 15).

According to the Ninth Circuit Court of Appeals, a person suffering from a mental illness may not even realize that his "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)). When a person suffers from a mental illness, especially a severe one such as the severe depression suffered by plaintiff here, as found by the ALJ, (see Tr. 9), and the mentally ill person does not have the requisite insight into his condition to seek help consistently from every medical professional who conducts an evaluation of his mental health status, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124.

Based on the reasons stated above, and based on the relevant record, the Court finds that the ALJ's reliance on plaintiff's "incidents of noncompliance" does not provide substantial support for discrediting plaintiff's testimony.

The ALJ discounted plaintiff's credibility on the basis of plaintiff's reported activities of daily living, however, the ALJ did not discuss why said activities were inconsistent with any particular aspect of his testimony regarding his impairments and limitations (Tr. 15). This was error, as the decision of the ALJ should "include a discussion of why reported daily activity

limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. In addition, "if a claimant 'is able to spend a *substantial part* of h[is] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan, supra, 260 F.3d at 1049 (*quoting* Morgan, 169 F.3d at 600) (emphasis added in Vertigan)). Here, the ALJ made no specific finding that plaintiff's activities of daily living involved the performance of physical functions that were transferable to a work setting. Therefore, the Court does not find substantial support for the adverse credibility finding by the ALJ based on plaintiff's activities of daily living. See Vertigan, supra, 260 F.3d at 1049.

The ALJ also considered plaintiff's work history (Tr. 15). The ALJ specifically noted that plaintiff earned $2,592 in 1995, $3,319 in 1996, $11,793 in 1997, $1,592 in 2000 and $4,856 in 2001 (id.). However, the ALJ failed to note that plaintiff earned $21,503 in 1998, $14,168 in 1999, $17,960 in 2002, $33,178 in 2003, $27,276 in 2004, $24,636 in 2005, $38,831 in 2006 and $24,050 in 2007 (Tr. 129). It is not clear why the ALJ chose to note only plaintiff's earnings from 1995, 1996, 1997, 2000 and 2001, nor is it clear why the ALJ chose to skip over the 1998 and 1999 earnings, as well as the 2002-2007 earnings by plaintiff. However, it is clear that the ALJ noted plaintiff's recent earning only for the five years during which plaintiff's earnings were substantially lower that it was for the years which the ALJ did not mention. The ALJ's inclusion of only the recent years during which plaintiff's earnings were lower misconstrues the full record.  This discussion does not provide substantial support for the ALJ's credibility assessment.

The ALJ also noted that plaintiff testified that "he quit his job in August 2006 without giving his boss much notice," and that he told his treating physician that he could not tolerate the long-haul aspect of his truck driving (Tr. 15). However, the ALJ failed to note plaintiff's testimony that he quit because truck driving was not a good mix with taking medications that made him drowsy, and that he wished he could have given his boss more notice (Tr. 34-35).

For the reasons stated above, the Court does not find substantial support for the ALJ's adverse credibility finding from the ALJ's assessment of plaintiff's work history.

The ALJ also notes that plaintiff was incarcerated for domestic violence, marijuana possession and spent the night in the "drunk tank" at the age of nineteen for stealing candy (Tr. 15). Although these criminal infractions do not have a significant amount of bearing on the issue of plaintiff's ability and willingness to give credible testimony under penalty of perjury, the ALJ found that plaintiff's "criminal history . . . . does present significant issues regarding the veracity and truthfulness of his application and testimony" (Tr. 16).

Although a few other reasons are given by the ALJ in support of the credibility assessment, based on the relevant record and the foresaid reasons, the Court concludes that the ALJ failed to evaluate properly plaintiff's testimony, and failed to provide specific "clear and convincing" reasons for rejecting the claimant's testimony. See <u>Smolen</u>, 80 F.3d at 1283-84

4) <u>The ALJ should reevaluate plaintiff's severe impairments</u>.

The Court already has concluded that the ALJ failed to evaluate properly the medical evidence and plaintiff's testimony, among other things. Based on these errors by the ALJ and the relevant record, the ALJ assigned to this case following remand of this matter should reevaluate the record as a whole, including the issue of plaintiff's severe impairments.

5) <u>This matter should not be remanded for an award of benefits</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Harman</u>, 211 F.3d at 1178 (*quoting* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. <u>See</u> <u>Smolen</u>, 80 F.3d at 1292. In addition, the ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722; <u>Andrews</u>, <u>supra</u>, 53 F.3d at 1043. If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample</u>, <u>supra</u>, 694 F.2d at 642.

Therefore, remand is appropriate to allow the administration the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and the remaining steps of the five step sequential disability evaluation process as necessary. <u>See</u> <u>Sample</u>, 694 F.2d at 642.

<u>CONCLUSION</u>

After considering and reviewing the record, the undersigned finds that the ALJ failed to evaluate properly the medical evidence, including the opinions of treating neurologist Dr. Clifford Schostal, M.D. and examining psychologist Dr. Brian Adams, Ph.D. The ALJ also failed to evaluate properly whether or not plaintiff's impairments met or medically equaled a listed impairment pursuant to 20 C.F.R. pt. 404, Subpt. P, App. 1, specifically Listing 11.14. Finally, the ALJ also failed to evaluate properly plaintiff's credibility.

For these reasons, judgment should be for plaintiff. Based on the specified errors, the ALJ assigned to this matter following remand should conduct a new hearing, evaluate the record anew as a whole, conduct a new sequential five step disability evaluation as necessary and issue a new decision.

Based on the relevant record and the foresaid reasons, the Court hereby **REVERSES** and **REMANDS** this matter to the administration for further consideration.

Dated this 20th day of June, 2011.


J. Richard Creatura
United States Magistrate Judge